IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

LT. COL. JOHN CALE BROWN, SR.,  *
and DARLENA BROWN, Individually
and as parents and Next Friends *
of JOHN CALE BROWN, JR., a
Minor,                          *

     Plaintiffs,                *     CASE NO. 4:14-CV-279 (CDL)

vs.                             *

FORT BENNING FAMILY COMMUNITIES *
LLC, d/b/a VILLAGES OF BENNING
and MICHAELS MANAGEMENT         *
SERVICES, INC.,
                                *
     Defendants.

_____

O R D E R

     John  Brown,  Sr.  is  a  lieutenant  colonel  in  the  United

States  Army.   While  stationed  at  Fort  Benning,  Georgia,  he  and

his  wife  Darlena  ("the  Browns")  rented  a  home  on  post  from

Defendant  Fort  Benning  Family  Communities,  LLC,  d/b/a  Villages

of  Benning  ("the  Villages").   The  Villages  is  a  private  company

that  provides  residential  housing  to  soldiers  on  Fort  Benning

pursuant  to  a  contract  with  the  Army.   The  Browns  claim  that

lead  in  their  rented  residence  made  their  minor  son  ill.   They

contend  that  the  Villages  failed  to  provide  them  with  a

reasonably  safe  residence,  failed  to  properly  abate  the  lead  in

their  residence,  and  made  misrepresentations  to  them  regarding

the  presence  of  lead  in  the  home.   The  Browns  filed  an  action  in

the Muscogee County Superior Court, alleging state law tort claims against the Villages for negligence, nuisance, and fraud. The Villages removed the case to this Court. The Browns then amended their complaint to add more specific factual allegations in support of their fraud claim and to add Defendant Michaels Management Services Inc. as a party.

The Villages seeks dismissal of the Browns' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), contending that this Court lacks subject matter jurisdiction over the case because the Villages has derivative sovereign immunity from suit. The Villages alternatively argues that the Browns fail to state a fraud claim as a matter of law, and that the fraud claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court finds that although the United States may be entitled to sovereign immunity, that immunity does not extend to the Villages. The Court further finds that the Browns adequately alleged a claim for fraud. Accordingly, the Villages' motion to dismiss (ECF No. 15) is denied.

MOTION TO DISMISS STANDARDS

## I.  Rule 12(b)(1) Standard

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) can be either facial or factual. *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657

2

F.3d 1159, 1169 (11th Cir. 2011).  When a party raises a factual attack to subject matter jurisdiction, as the Villages does here, the Court "is not obligated to take the allegations in the complaint as true" but rather "may consider extrinsic evidence such as deposition testimony and affidavits."  *Id.* (internal quotation marks omitted).  The Court "may independently weigh the facts and is not constrained to view them in the light most favorable to the non-movant."  *Id.*

## II. Rule 12(b)(6) Standard

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims.  *Id.* at 556. "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'"  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

FACTUAL BACKGROUND

Lt. Col. Brown is an active member of the Army stationed at Fort Benning, Georgia.  He and his family rented housing from the Villages, which owns and operates military housing at Fort Benning on behalf of, and as part of a real estate public-private venture with, the Army.  This venture is established under the authority of the Military Housing Privatization Initiative ("Housing Initiative"), 10 U.S.C. § 2871 *et seq.* Defendant Michaels Managing Services provides routine upkeep and maintenance to properties on behalf of the Villages.  The Browns allege that Defendants were responsible for the inspection and abatement of toxic levels of lead in their rented home.

The Browns signed a lease for 600 Wickersham, Fort Benning on or about April 1, 2011.  At that time, the Villages presented the Browns with a Lead-Based Paint Addendum.  The Addendum warned that housing built before 1978 may contain lead-based paint and that exposure to lead could be harmful to young children and pregnant women.  The box next to the statement "[k]nown lead-based paint and/or lead-based paint hazards are present in the housing (explain)" was marked, with the explanation that "[i]n 2005 an assessment was done by Altec Testing & Engineering, Inc. [r]esults of which are available upon request."   Mot. to Dismiss Ex. B, Lead-Based Paint Addendum, ECF No. 15-2 at 13 [hereinafter Lead Addendum].  Mrs.

Brown expressed concern, stating that she had an eleven-month old child and was pregnant.   Cathy McClendon, an employee or agent of the Villages or Michaels Management, told the Browns: "You have nothing to worry about.   We are just required to give you this form.   People have lived in these houses for years and they've been properly abated and examined after each family moves out . . . . We repaint after every family moves out."   1st Am. Compl. ¶ 6, ECF No. 11.   Lt. Col. Brown requested the assessment referenced in the Lead Addendum, but Ms. McClendon told him that it was not available to him at that time.

On or before December 20, 2012, the Browns told Defendants that they suspected their minor child JC was suffering from lead poisoning because a child psychologist diagnosed JC with "Pervasive Development Disorder; Mixed Receptive and Expressive Language Disorder; [and] Developmental Delays."  *Id*. ¶ 10.   The Browns requested a lead test for the home, which revealed the presence of lead at 600 Wickersham and required the Browns to vacate the premises.   The Browns moved to 602 Wickersham and requested a lead test on that home from the Columbus Department of Public Health.   Two separate tests revealed lead levels higher than the federal standard, indicating a possible lead hazard.   The Browns again asked to view the assessment referenced in the Lead Addendum, and were permitted to do so in the Villages' office under the condition that they neither copy

nor photograph the document. The assessment involved two randomly selected houses on post but not on Wickersham.

The Lead Addendum stated that the Villages provided the Browns with "all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below)." Lead Addendum. In the space below this statement, the Lead Addendum said that "[s]urvey results are available upon request from management. Test results for homes that were sampled are provided to resident upon move-in." *Id.* The Browns maintain that no survey results, records, or reports were provided or made available to them when requested prior to their move-in.

DISCUSSION

**I.  The Villages' Rule 12(b)(1) Motion**

The Villages contends that the Court lacks subject matter jurisdiction over the Browns' claims because the Villages has sovereign immunity. The Villages argues that the United States would have sovereign immunity against such claims and that the United States has not waived that immunity under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, because the fraud and discretionary function exceptions to the FTCA apply here. Due to its alleged agency relationship with the Army, the Villages contends that if the United States is entitled to

immunity, it too enjoys "derivative" sovereign immunity when operating military housing on behalf of the Army.

The United States is immune from suit unless it consents to be sued. *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015). The federal government has waived its immunity from tort claims under certain circumstances as provided in the FTCA. *Id.* But there are exceptions to this waiver of immunity. Two of the exceptions are implicated here—the discretionary function exception (28 U.S.C. § 2680(a)) and the misrepresentation exception (28 U.S.C § 2680(h)). "These exceptions must be strictly construed in favor of the United States and, when an exception applies, a court will lack subject matter jurisdiction over the action." *Id.* at 1326-27 (internal quotation marks omitted).

The Browns make no claims against the United States in this action. Its sovereign immunity is thus not directly involved in the pending motion. Instead, the Villages, a private contractor of the United States, seeks to benefit from any immunity that the United States would enjoy if the United States were a party. This derivative immunity is not coterminous with the sovereign immunity of the United States. To be entitled to derivative sovereign immunity, the Villages must establish that the United States would enjoy sovereign immunity if the claims asserted here were asserted against it. The Villages must also prove

that it was acting as an agent of the United States when it committed the allegedly tortious conduct and that the basis on which the United States would be entitled to sovereign immunity supports an extension of that immunity to the Villages, notwithstanding its status as a private actor. *See McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1346 (11th Cir. 2007) (finding that for a private party to enjoy derivative sovereign immunity it must show not only its status as a common law agent of the government but also "that the policies underlying [the government's immunity] extend to private contractor agents").

For purposes of the pending motion, the Court assumes without deciding that the United States would be entitled to sovereign immunity from the Browns' claims because of the misrepresentation and discretionary function exceptions to the FTCA. The next step in the analysis is to determine whether the Villages acted as an agent of the United States for purposes of derivative immunity.

To establish an agency relationship, the Villages relies in part on a "Memorandum of Ground Lease and Conveyance of Improvements," which purportedly memorializes the ground lease between the Villages and the Army. Mot. to Dismiss Ex. A, Mem. of Ground Lease, ECF No. 15-1. The Browns object to the Court's consideration of this agreement, claiming it has not been properly authenticated. But the Browns' own complaint alleges

that part of the Villages' purpose "is to own and manage
military housing in Fort Benning," Am. Compl. ¶ 2, which is
essentially what the Villages attempts to establish with its
Memorandum of Ground Lease.  Moreover, the Villages attached a
certified copy of the Memorandum to its Reply.  The Court thus
does not have serious doubts about the document's authenticity.
The present record supports a finding that a contractual
relationship existed between the Villages and the Army.  It is
not entirely clear from the present record, however, whether
this contractual relationship amounts to an agency relationship
for purposes of derivative sovereign immunity.  But the Court
does not have to resolve that issue today because, as explained
in more detail below, neither the fraud nor discretionary
function exception to the FTCA shields a private contractor like
the Villages from liability under the circumstances presented
here.  The Villages, therefore, is not entitled to derivative
immunity even if it is deemed to be an agent of the Army.

The Villages relies on *McMahon* to support its claim of
derivative sovereign immunity*.  See* 502 F.3d at 1343 ("[T]o make
out a claim of derivative sovereign immunity in this circuit,
the entity claiming the immunity must at a bare minimum have
been a common law agent of the government at the time of the
conduct underlying the suit.").  Although *McMahon* requires proof
of agency before derivative sovereign immunity is available, the

court in *McMahon* makes clear that agency alone is not sufficient for the extension of derivative sovereign immunity. *Id.* at 1346. Instead, a private entity seeking derivative sovereign immunity must establish that it is an agent of the government *and* that the policies underlying the immunity support the extension of immunity to private contractor agents. *Id.* In the following discussion, the Court analyzes the underlying purposes of the fraud and discretionary function exceptions to the FTCA and concludes that allowing the Villages to enjoy absolute immunity based on those exceptions would not be consistent with their purposes.

A.  Derivative Sovereign Immunity Based on the FTCA Fraud Exception

The Browns bring a fraud claim against the Villages based on allegations that an agent of the Villages told them that they had nothing to worry about regarding lead paint in 600 Wickersham because the property had been properly abated, examined, and repainted. The Browns allege that the agent intended to deceive them and knew her statement to be false at the time she said it. The Browns also allege that they justifiably relied on the false representations and that they and their minor child suffered damages. As previously explained, the Court assumes, without deciding, that the fraud exception to the FTCA would apply to the Army on this claim, and

that the United States would enjoy sovereign immunity as to the Browns' fraud claim.   To determine whether the Villages is entitled to derivative immunity for this claim, the Court examines the underlying policies supporting the FTCA's fraud exception.

The FTCA bars fraud claims against the United States.  *See* 28 U.S.C. § 2680(h) (excluding from scope of FTCA "[a]ny claim arising out of . . . misrepresentation [or] deceit"); *see also Zelaya*, 781 F.3d at 1338 (affirming district court's dismissal of misrepresentation claim against the United States based on § 2680(h)).  The Eighth Circuit has described the intent of the misrepresentation exception as being "to except from the [FTCA] cases where mere 'talk' or failure to 'talk' on the part of a government employee is asserted as the proximate cause of damages sought to be recovered from the United States."  *Nat'l Mfg. Co. v. United States*, 210 F.2d 263, 276 (8th Cir. 1954). The question here is whether this rationale applies to fraud claims against private government contractors like the Villages.

It is understandable that Congress would want to protect the public treasury from claims asserted against rogue government employees who engage in fraudulent activity.  It is also rational to retain sovereign immunity as to such claims, particularly given the difficulty in defending claims that are based primarily on what one party may say they communicated to

11

another party and what they knew when they communicated it.   But
the Court can conceive of no legitimate reason to protect a
private entity from such claims, particularly when no evidence
exists in the present record that the Army played a material
role in the alleged misrepresentations.   The Court finds that
the FTCA's fraud exception provides no basis for extending
sovereign immunity to the Villages.

> B.   Derivative Sovereign Immunity Based on the FTCA
>      Discretionary Function Exception

The Villages also argues that it is entitled to immunity
because the United States would receive immunity under the
FTCA's discretionary function exception.   The Browns' negligence
claim is based on allegations that the Villages owed them a
legal duty to provide a safe residential environment free from
toxic and harmful lead levels.   Similarly, the Browns assert a
nuisance claim based on the Villages' continuing failure to
inspect and abate the presence of toxic and harmful lead levels
at 600 and 602 Wickersham.   The Villages argues that it is
immune from state tort liability for any tortious conduct
relating to these claims that was "discretionary" and pursuant
to a federal contract.

The discretionary function exception excludes from the FTCA
"[a]ny claim . . . based upon the exercise or performance or the
failure to exercise or perform a discretionary function or duty

12

on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception to FTCA liability arises in part from concerns related to separation of powers within the federal government. "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," so as not to "seriously handicap efficient government operations." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).

"In guiding the courts' application of the discretionary function exception, the Supreme Court has formulated a two-part test. First, the conduct that forms the basis of the suit must involve an element of judgment or choice by the employee." *Zelaya*, 781 F.3d at 1329 (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). "[T]he inquiry focuses on whether the controlling statute or regulation mandates that a government agent perform his or her functions in a specific manner." *Id.* (internal quotation marks omitted). "If a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, the Government will have failed to show that the action at issue allowed for the employee's exercise of judgment or choice . . . ." *Id.* at 1329-30. "[T]he second part of the test requires the court to 'determine whether

that judgment is of the kind that the discretionary function exception was designed to shield.'" *Id.* at 1330 (quoting *Berkovitz*, 486 U.S. at 536). Since "the purpose of the discretionary function exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," *Nguyen v. United States*, 556 F.3d 1244, 1251 n. 2 (11th Cir. 2009), "[a] particular decision will be of the kind protected by the exception if it is the type of decision that one would expect to be inherently grounded in considerations of policy." *Zelaya*, 781 F.3d at 1330. "[W]hen a government agent is permitted to exercise discretion in making a particular decision—whether that permission is express or implied—'it must be presumed that the agent's acts are grounded in policy when exercising that discretion.'" *Id.* (quoting *United States v. Gaubert*, 499 U.S. 315, 324 (1991)).

Since the purpose of the discretionary function exception is to prohibit judicial second-guessing of the Government's policy decisions, it follows that sovereign immunity grounded in this exception should only extend to a private party if the party carried out explicit instructions from the Government. *See e.g., Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988) (explaining that a private contractor should only be insulated from suit when "the design feature in question was considered by

14

a Government officer, and not merely by the contractor itself"). The record here does not support a finding that the challenged actions were considered by an Army officer. Consequently, the Court cannot conclude that insulating the Villages from potential tort liability would further the purposes of the discretionary function exception.

The other cases relied on by the Villages are distinguishable for similar reasons. In *Yearsley v. W.A. Ross Construction Company*, 309 U.S. 18, 19 (1940), the defendant contractor built river dikes "under the direction of the Secretary of War and the supervision of the Chief of Engineers of the United States." The record here does not establish that the Villages' actions were under the direction or supervision of the Army. So while applying derivative sovereign immunity in *Yearsley* furthered the discretionary function exception's goal of limiting judicial second-guessing of the Government's policy decisions, it is not clear that protecting the Villages from potential liability would accomplish the same.

In *Ackerson v. Bean Dredging LLC*, the private defendants performed river-dredging projects that were constructed by the United States Army Corps of Engineers. 589 F.3d 196, 207 (5th Cir. 2009). The plaintiffs brought suit against the defendants alleging that their dredging activities caused environmental damage to protected wetlands. The Fifth Circuit held that the

district court did not err in dismissing the action because "Congress initially approved the [project] and [] the U.S. Army Corps of Engineers constructed the project." *Id*. The Browns have not alleged, and the record does not reveal, that the Army was similarly involved in the Villages' conduct that gives rise to Plaintiffs' claims. Extending derivative sovereign immunity to the Villages based on the FTCA's discretionary function exception would not prevent judicial second-guessing of the Government's policy decisions because the record does not reveal that the complained-of actions were in any way governmental actions. Shielding the Villages from tort liability thus does not further the separation of powers among the various branches. Accordingly, sovereign immunity should not be extended to the Villages based on the FTCA's discretionary function exception.

## II.   **The Villages' Rule 12(b)(6) Motion**

The Villages argues that even if this Court has jurisdiction over the Browns' claims, their fraud claim fails as a matter of law. For purposes of this argument, the Browns allegations must be accepted as true. Under Georgia law, a plaintiff alleging fraud must demonstrate: (1) a false representation by the defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damages. *Kilroy v. Alpharetta Fitness, Inc.*, 295 Ga. App. 274, 275-76, 671

S.E.2d 312, 313 (2008).   The Browns claim that the Villages'
agent made a false representation assuring the Browns that they
need not worry about lead paint in their housing because it had
been properly abated and repainted.   The Browns allege that the
Villages knew the statement to be false at the time it was made,
and intended to deceive the Browns.   The Browns claim that they
justifiably relied on the false representation by moving into
the home without further investigation and were damaged as a
result when their child suffered lead poisoning.

The Villages responds that the Browns cannot show
justifiable reliance because their lease contract and related
documents informed them of the existence of lead paint in their
residence.   The Villages relies on *Silver v. Countrywide Home
Loans, Inc.* for the general principle that a party "could not
reasonably be deceived by any oral statements that were at
variance with written terms to which [the party] agreed."   483
F. App'x 568, 570 (11th Cir. 2012) (per curiam).   The Browns
allege that they read the written terms of the contract
regarding lead paint, but were assured that they need not worry
because the housing had been properly abated and repainted.
Construing all reasonable inferences in favor of the Browns as
required at this stage of the proceedings, the Court finds that
they have sufficiently alleged facts that support the element of
justifiable reliance.   The Court also rejects the Villages'

17

contention that the Browns did not allege actual injury. They allege that their son suffered brain damage from lead poisoning as the result of the Villages' misrepresentation about the presence of lead paint in their home. The Browns' allegations are sufficient to survive a motion to dismiss.

CONCLUSION

Even if the United States were entitled to sovereign immunity from the claims asserted in this case, the present record does not support the extension of that immunity to the Villages. Consequently, the Court has subject matter jurisdiction over these claims, and the Villages' motion to dismiss pursuant to Rule 12(b)(1) (ECF No. 15) is denied.

As previously explained, the Browns sufficiently stated a claim for fraud, and therefore, the Villages' motion to dismiss pursuant to Rule 12(b)(6) (ECF No. 15) is likewise denied.

The clerk shall issue a Rules 16/26 order, and the parties shall proceed with discovery accordingly.

IT IS SO ORDERED, this 3rd day of June, 2015.

_S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA