IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| COLONEL JOHN CALE BROWN, SR., <br> and DARLENA BROWN, individually and as <br> parents and next friend of "JC", a minor, | * <br> * <br> * <br> * | |
| Plaintiffs, | * <br> * | CIVIL ACTION FILE NO.: <br> 4:14-CV-279(CDL) |
| v. | * <br> * | |
| FORT BENNING FAMILY <br> COMMUNITIES, LLC, d/b/a VILLAGES <br> OF BENNING and MICHAELS <br> MANAGEMENT SERVICES, INC., | * <br> * <br> * <br> * <br> * | |
| Defendants. | * | |

### REDACTED CONSENT MOTION AND BRIEF FOR TRIAL COURT'S APPROVAL OF SETTLEMENT AND DISMISSAL OF ALL CLAIMS

Comes now the parties in the above styled litigation and pursuant to O.C.G.A. § 29-3-3 move the Court to approve their settlement of all claims and a dismissal of the above captioned complaint and in support thereof file this brief for the Trial Court's consideration. In particular the parties ask:

1. For the Court to make all necessary inquires relating to the facts of the case, the alleged liability of Defendants, and the extent of Plaintiff's injuries and damages in this case;

2. For the Court to consider the settlement that has been agreed upon by the parties, including the claims on behalf of the minor, John Cale Brown, Jr., and the claims of his parents, John Cale Brown and Darlena Brown.

3. For the Court to determine if the settlements are in the best interest of the minor child,

1

and;

    4. For the Court to issue an appropriate order and judgment.

## I.     Facts and Liabilities

The Plaintiffs, Colonel John Brown and his wife Darlena Brown filed their First Amended and Recast Complaint in their individual capacity and as the parents and next friend of JC their minor child on January 21, 2015, [ECF No. 11]. In their complaint, they allege Defendant Fort Benning Family Communities LLC., d/b/a Villages of Benning (hereinafter referred to as "FBFC") was the owner and manager of military housing on Fort Benning in Muscogee County Georgia and that Defendant Michaels Management Services, Inc. (hereinafter referred to as "Michaels") was the entity responsible for facility management, upkeep and maintenance of the properties.

The Plaintiffs allege that on April 1, 2011, Col. Brown, who was serving in the United States Military, contracted with FBFC to lease 600 Wickersham Ave. as a residence for his family, including his pregnant wife, and their minor child "JC" who was 11 months old at the time. Plaintiffs claim that at the time they signed their lease they were provided with a series of "ancillary" documents as exhibits or addendums to the lease including a lead based paint addendum. Plaintiffs allege that the lead based paint addendum was concerning to them because Mrs. Brown was pregnant at the time with their second child and therefore they raised the issue and expressed their concern. The complaint alleges that they were told by an agent and employee of Michaels that "you have nothing to worry about. We are just required to give you this form. People have lived in these houses for years and they've been properly abated and examined after each family moves out." "…we repaint after every family moves out." [ECF No. 11 at para 6.]

The Plaintiffs further allege that the lead paint addendum that they received and signed made reference to a 2005 assessment by Altec Testing & Engineering, Inc. (hereinafter referred to as "the assessment") "results of which are available upon request." According to the Plaintiffs, they requested the assessment on April 1, 2011, but were told by the agent and employee of Michaels that it was "not in the packet and not available to him at that time."

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ They so informed the Defendants who, they claim, then tested the house and discovered the presence of lead and moved the Plaintiffs next door to 602 Wickersham Ave. Plaintiffs then had the Columbus Department of Public Health inspect and test 602 Wickersham Ave. for lead, and their complaint alleges that, on two separate occasions, the tests revealed lead levels that were "higher than the federal standard, which indicates there may be a lead hazard in your home" [ECF No. 11 para 13].

Plaintiffs complain that when they were finally allowed to review the assessment, it was deficient in its scope and not easily accessible to the residents. They further complain that they were not given access to the testing done after their complaints on 600 Wickersham Ave., and that they relied upon the assurances of the agent and employee of Michaels in deciding to live in both 600 Wickersham Ave., and 602 Wickersham Ave. They included counts for negligence, nuisance and fraud in their complaint.

On February 4, 2015, FBFC filed a Motion to Dismiss Plaintiff's First Amended Complaint based on the principles of Derivative Sovereign Immunity and for failure to plead

the necessary elements of fraud [ECF No. 15-2] which this Court denied on June 3, 2015, [ECF No. 22].

In their answers, both FBFC and Michaels admitted that, through a ground lease with the United States of America, FBFC owned military housing at Fort Benning and had entered a service agreement with Michaels to manage the property [EFC No. 24 para 2,3]. Both Defendants also agreed that the Plaintiffs were aware of the risk of lead based paint when they signed the lease and moved into both residences as evidenced by the specific "lead based paint addendum." Defendant Michaels denied that any employee or agent of theirs ever made the type of assurances to the Plaintiffs as described in the complaint. Michaels also contends that the assessment described in the addendum was readily available in the rental office and they never denied access to it to anyone including the Plaintiffs.

Although this case has been pending for 3 years, the litigation has been stayed by this Court for a considerable amount of time while Declaratory Judgment Actions concerning insurance coverage for the claim have made their way through various courts. (See text order for a stay entered on September 13, 2015, [ECF No. 33] and again on April 27, 2016, [ECF No. 35] and lifted on November 28, 2016, [ECF No. 36]).

Although depositions were never taken, the parties conducted extensive written and document discovery including medical reviews and expert consultations. In response to interrogatories, Plaintiffs claim that JC suffered the known effects of lead poisoning ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ They produced test results that indicated a higher than normal amount of lead found in their residence. They admitted that JCs family and younger brother had not been affected

4

by lead poisoning.  The Plaintiffs also initiated a claim against the United States Government for the injuries but chose not to pursue it.

The many defenses asserted by the Defendants, include the fact that the historical military housing that the Plaintiffs chose to live in a place that had a history of lead paint and the Defendants fully disclosed that risk. Newer housing was available to the Plaintiffs and Plaintiffs assumed the risk when renting the Wickersham Ave. properties. Defendants also demonstrated through email exchanges that once the problems with JC were alleged, they immediately offered to move the family to newer, more modern housing which the Plaintiffs initially refused. Most importantly, in the voluminous medical records obtained by the Defendants regarding JC, there was a year one wellness checkup indicating concerns on the child's development and a possible history of lead paint exposure previous to the date the Plaintiffs moved in to the subject residence.  Defendants believed and still believe that if this case were to go to trial, the Plaintiffs would have difficulty establishing their claim for fraud because The Plaintiffs were made aware of the risk and would also have serious problems with causation and establishing that the lead poisoning risk even existed.

On May 30, 2017, Plaintiffs' counsel filed a motion to withdraw [ECF No. 38] which was denied the next day [ECF No. 40]. The parties then began a series of on again and off again negotiations and a considerable effort was spent on negotiating the terms of a non-disclosure agreement all of which culminated in an agreed upon release and non-disclosure agreement, the terms of which will be disclosed in open court in the Pro Ami hearing scheduled for February 21, 2018. Attorney Virgil Ted Theus has been appointed as the Guardian Ad Litem [ECF No. 48] and he filed his answer on February 15, 2018, [ECF No. 50] and this Court has scheduled a hearing to consider this Motion on February 21, 2018.

## II.     Settlement

As discussed above, an essential and important part of the settlement discussions involved the confidentiality and non-disclosure agreement which were negotiated over several weeks. Without these terms this case would not have settled. The Defendants strongly deny liability and were willing to defend this action to a jury verdict. The Defendants and Plaintiffs acknowledge the uncertainty of a jury trial and further acknowledge that a verdict in favor of the Plaintiff could be considerable considering the injuries Plaintiffs allege. Plaintiff acknowledges the several defenses of the Defendants, and Plaintiff understands that proving causation and fraud would be very difficult with numerous legal obstacles to overcome.  The parties acknowledge that this case has already been very expensive with Defendants defending multiple declaratory judgment actions from insurance companies and will continue to be expert witness intensive with numerous fact, medical and expert depositions to be taken.

In deciding on a settlement, Defendants recognize that Plaintiffs' counsel has agreed to significantly reduce his fees, and the parents have agreed that all remaining funds are to be placed in an irrevocable trust for the child's benefit.  Simply put, the parties have agreed to avoid the uncertainties of a jury trial and the considerable expense of continued litigation, by compromising a doubtful claim and placing otherwise expended funds in a Special Needs Trust for the benefit of JC..

In hopes of protecting the non-disclosure agreement, the parties ask that this court consider O.C.G.A. § 29-9-18 which requires all of the records relating to any guardianship or conservatorship that is granted under that title to be kept under seal except for a record of the names and addresses of the ward and guardian or conservator…., to allow the answer of the guardian ad litem to be kept as a restricted filing.

## III.   Conclusion

Based on the above and on the answer of the guardian ad litem, as well as the facts outlined in the Pro Ami hearing and in response to the questions by the court, the parties request that this court determine that the settlement is in the best interest of JC and that the answer of the guardian ad litem remain restricted and that this case can be dismissed with prejudice.

This 20 day of February, 2018.

              /s/ Neal J. Callahan
             Neal J. Callahan
             State Bar No.:  104551
             Counsel for Defendants Michaels Management Services and Fort Benning Family Communities LLC, D/B/A Villages of Benning

**WALDREP, MULLIN & CALLAHAN, LLC**
111 12th Street, Suite 300
Post Office Box 351
Columbus, GA  31902
T: (706) 320-0600
F: (706) 320-0622


              /s/ Donald P. Edwards
             Donald P. Edwards
             State Bar No. 240575
             Attorney for Plaintiffs

**LAW OFFICE OF DONALD P. EDWARDS**
170 Mitchell Street, SW
Atlanta, Georgia 30303-342

## **CERTIFICATE OF SERVICE**

This is to certify that I have this date served a copy of the foregoing by placing a copy of the same in the United States mail with adequate postage affixed thereto, properly addressed to:

Donald P. Edwards
LAW OFFICE OF DONALD P. EDWARDS
170 Mitchell Street, SW
Atlanta, Georgia 30303-3424

This 20 day of February, 2018.

                                                /s/ Neal J. Callahan
                                               Neal J. Callahan

**WALDREP, MULLIN & CALLAHAN, LLC**
111 12th Street, Suite 300
Post Office Box 351
Columbus, GA  31902
T: (706) 320-0600
F: (706) 320-0622
njc@waldrepmullin.com